343 So.2d 277 (1977)
In re Investigation of Possible Violation of the Civil Service Law and Rules by Officials and/or Employees of the DIVISION OF ADMINISTRATION.
No. 11059.
Court of Appeal of Louisiana, First Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
Phil E. Miley, Baton Rouge, for Division of Administration.
R. Gray Sexton, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, CHIASSON, EDWARDS and PONDER, JJ.
ELLIS, Judge.
On September 11, 1975, the State Civil Service Commission adopted the following resolution:
"WHEREAS The Commission is in receipt of the Director's report of certain activities transpiring at the Division of Administration and the `Department of Contractual Review' which report includes *278 a review by the Personnel Management Division of the Department of Civil Service of the payroll records of the Division of Administration and the `Department of Contractual Review' for the period ending February 23, 1975; and whereas the report indicates additionally that the Division of Administration presently has on its payroll a number of employees whose appointments have not been approved by the Director and who otherwise may be illegally employed in violation of pertinent Civil Service Rules and provisions of the Civil Service Article; and whereas the report also indicates a section of the Division of Administration, known as the `Department of Contractual Review', has engaged employees whose appointments have not been approved by the Director and who otherwise may be illegally employed in violation of the Civil Service Rules and provisions of the Civil Service Article.
"NOW THEREFORE BE IT RESOLVED that an investigation by public hearing be held pursuant to the authority of Section 10(B) of Article X of the Louisiana Constitution to inquire into and determine whether or not the Division of Administration and the `Department of Contractual Review' presently have in their employ individuals whose appointments have not been approved by the Director as required by Rules of the Commission or who otherwise are illegally engaged in violation of the Civil Service Article and Rules of the Commission. "IT IS FURTHER RESOLVED that the Director set a date, time and place for the hearing and to present testimony and evidence pertinent to said investigation."
Pursuant thereto, notice of a public hearing for the purpose of conducting the investigation, to be held on October 8, 1975, was sent to 23 unclassified employees of the Division of Administration, including Charles E. Roemer, II, its Commissioner.
The Division of Administration filed a motion for summary disposition of the investigation, alleging a lack of authority on the part of the Commission to investigatea Department; and a lack of jurisdiction over the Division of Administration, because it is part of the Office of the Governor.
Evidentiary hearings were held by the Commission on October 8, 1975, January 6, 1976, and February 11, 1976. On July 8, 1976, the Commission rendered its opinion, in which it found the Division of Administration to be subject to the Civil Service Law, and directing it to take action to bring into the classified service all of its employees except its appointed head, and those occupying the two unclassified positions permitted by the Civil Service Law. From that opinion the Division of Administration has appealed.
The sole issue for our determination is whether or not the Division of Administration is part of the "Office of the Governor" within the meaning of Article 10, § 2, of the Constitution of 1974, which provides, in part, as follows:
"(A) Classified Service. The state and city civil service is divided into the unclassified and the classified service. Persons not included in the unclassified service are in the classified service.
"(B) Unclassified Service. The unclassified service shall include the following officers and employees in the state and city civil service:
. . . "(10) employees, deputies, and officers of the legislature and of the offices of the governor, lieutenant governor, attorney general, each mayor and city attorney, of police juries, school boards, assessors, and of all offices provided for in Article V of this constitution except the offices of clerk of the municipal and traffic courts in New Orleans."
The Commission determined that the phrase "Office of the Governor" included only the immediate staff of the governor, and not the entire Division of Administration. It based its finding on the case of State ex rel Murtagh v. Dept. of City Civil Service, 215 La. 1007, 42 So.2d 65 (1949), and on the fact that, since the inception of the present Civil Service System, the employees of the Division of Administration *279 have been part of the classified service, with the exceptions permitted by the law.
The Murtagh case dealt with an employee of the Permit Division of the City of New Orleans, who was discharged without cause. At that time, the City Civil Service Law provided that the unclassified service included "Officers, Secretaries and employees of the offices of the Mayor and City Attorney. . .". The power to issue permits was vested in the Mayor, who had the authority to designate "such inspectors, clerks, and other assistants as may be necessary for the proper conduct of the Permit Division."
Murtagh appealed his discharge, claiming to be a member of the classified service. The Mayor claimed that the Permit Division was part of his office and that Murtagh was therefore an unclassified employee. In finding that the Permit Division was not part of the Office of the Mayor, the court quoted with approval the following language from Friedman v. Finegan, 268 N.Y. 93, 196 N.E. 755 (1935):
"These exemptions which may be made by the Legislature or by the Civil Service Commission appointed under its authority must have relation to the duties of the office and not simply to the title which is used. In other words, there must be a reasonable exercise of the power given under the Constitution. With liberality in application, it must be that competitive examinations are not practicable for the position or office. There must be something * * * in the nature of the duties which makes the service either one of confidence or else of such importance that personal selection instead of competitive examination is for the best interests of the public and the fulfillment of the particular duties. In other words, the Legislature cannot act arbitrarily and exempt places from competitive examination at will. The duties must have some relationship to the exemption and the classification must be reasonable."
At that time, the Constitutional authority for the Civil Service System was Article XIV, § 15 of the Constitution of 1921, which provided:
"The Legislature shall provide for civil service in municipalities having a population of one hundred thousand (100,000) or more, and for the recognition and adoption of the merit system in the employment or appointment of all applicants; and shall provide against the discharge of employees or appointees without good and sufficient cause."
There was, therefore, a substantial question as to whether any employee could be placed in the unclassified service.
The Division of Administration was created by Act 133 of 1948. Section 1 of Title I thereof read as follows:
"Division of Administration: Be it enacted by the Legislature of Louisiana, that a Division of Administration whose employees shall be employees of the Office of the Governor is hereby constituted and created as a Division of the Office of the Governor, and shall hereafter exercise those powers and functions as hereinafter set forth and as may be further provided by law."
The foregoing provision became R.S. 39:1, and, in 1952, was amended to add a budget office. The relevant wording as to employee status was not changed.
Act 42 of 1956 once again amended the above section to read:
"A. A Division of Administration is hereby created as a division of the Office of the Governor, and shall exercise those powers and functions as hereinafter set forth and as may be further provided by law."
The functions of the Division of Administration are given as follows in R.S. 39:4:
"A. The functions of the division of administration shall comprise all administrative functions of the state, except as otherwise expressly provided by this Chapter, in relation to:
"(1) General management and supervision of the finances and financial operations and affairs of the state and all state agencies including allotment of expenditures *280 based on work program and preparation of the executive budget of the state.
"(2) Coordination of all the procedures for financial administration and financial supervision so as to integrate them into an adequate and unified system, including the devising, prescribing and installing of accounting procedures for all state agencies.
"(3) Formulation of financial plans and programs for approval and adoption by the governor and the legislature and exercising such supervision as is necessary to provide for carrying out such financial plans and programs as are adopted by the legislature.
"(4) Accounting supervision and fiscal reporting for all state agencies and the state as a whole.
"(5) Investigating the financial affairs and operations of the state and its agencies, as hereinabove defined.
"(6) Purchasing for state agencies when directed by executive order by the governor.
"(7) Controlling surplus property and assigning such property for use as required and prescribing and enforcing regulations governing the condemnation and disposition of movable properties of no further use to the state or its agencies.
"(8) The rental, purchase, erection or construction of any building, structure, or space to be used by state administrative agency for housing its personnel or facilities or carrying on its business. The commissioner, however, shall at all times utilize property owned by the state to house state agencies insofar as this is practicable and shall, to the best of his ability and consistent with their functions, house all state departments in a single building.
"B. The provisions of this Chapter shall not apply to the judiciary of the state, except the office of the Attorney General to which they shall apply, nor to the Legislature.
"C. The division of administration shall exercise such other duties and functions germane to its primary functions as may be prescribed by law or as directed by the governor by executive order."
We note that most of the foregoing functions are duties which have been conferred on the Governor, either by the Constitution or by Legislative Act. Article 4, §§ 1 and 5, Constitution of 1974; R.S. 39:7, 8, 9, 41, 61, 91. The Division of Administration also has duties relative to purchasing, accounting and data processing, travel regulations and property control which have been bestowed on it by the Legislature, but which are not specifically within the duties of the Governor. R.S. 39:100 et seq.; R.S. 39:171 et seq.; R.S. 39:231 et seq.; R.S. 39:321 et seq.
The Division contends that the legislature had intended for it to be part of the Office of the Governor, and its employees to be in the unclassified service. House Concurrent Resolution 264, adopted at the 1976 regular session, states that:
"WHEREAS, it is recognized that a ruling of the State Civil Service Commission did not recognize that the division is an integral part of the office of the Governor, that the division is entirely under the supervision, control, and direction of the Governor, that the division performs essential governmental duties imposed directly upon the governor and delegated by him to the division, and that the ruling by the State Civil Service Commission placing the employees of the division in the classified service has incorrectly interpreted the intent of the legislature evidenced by the wording of the statutes and the constitutional provisions from the time the division was created up to the preserft.
"THEREFORE, BE IT RESOLVED by the House of Representatives of the Legislature of Louisiana, the Senate thereof concurring, that the Legislature hereby goes on record that the intent and purpose of the Legislature is and always has been that the Division of Administration is a division of the office of the Governor, and as such is an integral part of his staff, performing essential constitutional and statutory functions for the Governor as the chief executive officer of the state, *281 under his control, and that officers and employees of the Division of Administration are officers and employees of the office of the Governor."
As further evidence of legislative intent, the Division cites the Executive Reorganization Act, Act 513 of 1976, R.S. 36:1 et seq. Pursuant to Article 4, § 1 and Article 14, § 6 of the Constitution of 1974, the act forms the Executive branch of the State Government, exclusive of the offices of the Governor and Lieutenant Governor, into 20 departments. It transfers functions of various boards, departments and divisions into the newly created departments. The Division of Administration is nowhere mentioned in the act, and it is argued that the only slot into which it can be placed is the Office of the Governor.
It is argued that, in this day of expanded governmental functions and increased executive authority, it is unrealistic to restrict the "Office of the Governor" to the personel who form his immediate retinue, and that the departments which assist in carrying out the constitutional and statutory duties of the Governor should be included therein.
The Commission argues that the issue has been settled by the Murtagh case, supra, and by the doctrine of contemporaneous construction, pointing out that, for over 20 years, the employees of the Division of Administration have been in the classified service. It is also argued that if we hold the Division is part of the unclassified service because it is part of the Office of the Governor, then any department of State government could be transferred to the Office of the Governor by the Legislature, and its employees would fall into unclassified service. The Commission alleges that this could destroy the Civil Service System and bring back the spoils system to State government.
Various provisions of the law creating the Division of Administration seem to make it unique among the departments of government in Louisiana. R.S. 39:3, for instance, provides:
"The division of administration shall consist of the position of commissioner of administration, and such other subdivisions or sections as are deemed necessary, in the opinion of the governor, to carry out budgeting, accounting controls, central purchasing, and purchasing supervision as provided for in this Chapter. These subdivisions and sections shall be established by executive order of the governor."
R.S. 39:5 assigns to the Governor the responsibility of creating whatever positions he deems necessary to carry out the functions of the Division. This provision is in direct conflict with the Civil Service Law relative to the classified service, in which positions can be created only under a classification plan made by the Commission.
After weighing the various factors involved, we have concluded that the Legislature intended that the Division be part of the Office of the Governor within the meaning of Article 10, § 2(B)(10), and that its employees fall into the unclassified service. In so deciding, we found the following considerations to be decisive: the classification of the Division as part of the Office of the Governor; the fact that the principal duties of the Division lie in areas which are the personal responsibility of the Governor under the Constitution; the discretionary authority of the Governor to create positions therein, and to form subdivisions and sections; the intention of the Legislature, as expressed in its concurrent resolution; and the desirability of the chief executive of the State having his fiscal recommendations formulated by those in whom he can repose trust and confidence.
The testimony of W. W. McDougall, the first Director of Personnel of the Department of Civil Service, makes it clear that no particular point was raised relative to the original inclusion of the Division in the classified service. We also note that the Attorney General's office has no classified employees whatsoever, that it has the same Constitutional exemption as the Office of the governor, and no question has been raised as to that office by the Commission, *282 although there were 180 employees in that office in fiscal 1975.
We recognize the compelling nature of the arguments advanced by the Commission, and the historical validity of its fears of a return to the spoils system. However, we do not believe that the restrictions placed on the Legislature by the Murtagh case are in any way diminished by our opinion herein. In this case, the Division of Administration was created as part of the Office of the Governor to assist him in carrying out his personal duties and never should have formed part of the classified service. We believe that the transfer of other departments of government to the Office of the Governor would not result in its employees being transferred to the unclassified service, for the reasons expressed in the Murtagh case, supra.
For the foregoing reasons, we are of the opinion that the Civil Service Commission is without jurisdiction to review the employment practices of the Division of Administration, and its order of July 8, 1976, is therefore reversed and set aside. The Commission shall bear whatever costs it may be liable for under the law.
REVERSED.
PONDER, Judge, dissenting.
I would affirm the decision of the Civil Service Commission.
The case of State ex rel Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65 (1949), held that the words "officers, secretaries and employees of the Mayor's office," exempted from the civil service laws applying to New Orleans only those employees "generally accepted as the office force of a Mayor and not employees of other departments placed under his supervision."
The Civil Service Amendment, adopted in 1952, listed among others, the following as part of the unclassified service: "officers and employees of the Legislature and of the offices of the Governor, Lieutenant Governor, Attorney General _ _ _." The present Constitution lists in the unclassified service "employees, deputies and officers of the Legislature and of the offices of the governor, lieutenant governor, attorney general _ _ _."
On May 11, 1953, the State Civil Service Commission ruled that the employees of the Division of Administration, the Budget Office and the Division of State Buildings were not in the office of the Governor within the meaning of the Constitutional Amendment and therefore were governed by the Civil Service Amendment. This ruling, unchanged and unappealed, has been acquiesced in by every Commissioner of Administration until the current one.
Even the present Commissioner secured the approval of the Civil Service Commission to hire some high and low echelon employees outside the Civil Service lists.
The legislative intent to abide by the Murtagh decision seems clear to me, at least until 1976. The statute adopted in 1948 originally read:
"A division of Administration whose employees shall be employees of the office of the governor is hereby created as a division of the office of the governor, and shall exercise those powers and functions as hereinafter set forth and as may be further provided by law." (Emphasis mine)
The Commission's decision that the Division of Administration, though administratively a part of the Governor's office, was not in the office of the governor within the meaning of the Civil Service Amendment was adopted in 1953, in the face of the above wording. The amendment to the statute in 1956 deleted the words underlined above and thereby removed the possible conflict between the statute and the Commission's ruling. The legislature's inaction on this point thereafter until 1976, speaks much louder to me than does House Concurrent Resolution 264, cited in the majority opinion. The impropriety of relying on such a Johnny-come-lately expression has been most forcefully expressed by the Supreme Court in State Licensing Board for Contractors v. State Civil Service Commission, 240 La. 331, 123 So.2d 76 (1960).
*283 I cannot find any clear expression of legislative intent in the Executive Reorganization Act. Such an intent, to my mind, would be violative of the Constitution and so invalid.
Perhaps, the basic difference between the majority and me lies in the fact that I do not find any legal impediment to the Division of Administration being in the "Office of the Governor" administratively and its employees not being "employees, deputies, and officers . . . of the office(s) of the governor" so far as the State Civil Service is concerned.
The argument made by the Division that it should be exempt from the Constitutional requirement so as to afford incoming governors with philosophically compatible support has two difficulties: First, logically extended, the argument is against the Merit or Civil Service system at all. Each incoming elected official can make the same plea that he needs the assistance so as to carry out the mandate given. Second, it is based upon the false premise that employees in the classified service are deficient in ability, loyalty or some other desirable trait. The contrary was proved by witnesses questioned at the hearing. The requirements of the governor have been met admirably by employees of the Division of Administration who thus far have been classified.
I am unimpressed, too, by the argument that there are other departments who have all their employees in the unclassified service. The question before the Commission and before us is that of the Division of Administration. At the worst, two wrongs do not make a right.
The majority opinion seems to limit the Murtagh decision to the situation of the legislature transferring an existing state agency to the "office of the governor" after Civil Service has become law. While there is some language in the case that can be interpreted so as to lead to that conclusion, I believe that was a result of the facts of the case being adjudicated. The rationale and the protective effect of the Murtagh case and this interpretation of the constitutional provision should apply equally, I contend, to the situations of the transfers even before the effective date of the Civil Service law and the assignment to the governor's office simultaneously with its creation. It is a matter of constitutional limitation, not just a 1949 case, that we are interpreting.
The majority opinion has made much of the long list of duties given to the Division and the close association with the governor required by the execution of some, not all, of those duties. Neither logic nor law inevitably requires, I believe, that all the employees of the Division of Administration be therefore unclassified as "employees of the governor." And that is the result of this opinion: all employees of the Division of Administration, inclusive of the telephone operators, the building guards and other similar workers are without civil service protection, except by the license and permission of the Commissioner. It is good to say that no such wholesale change is contemplated. I hope so. At the best, however, there is a world of difference between such protection being a matter of right rather than a matter of grace.
I agree with the majority that there are conflicts between the provisions of some of the statutory provisions in regard to the Division of Administration and the Civil Service Law. I resolve that conflict in favor of the Constitutional provisions.
The holding that the Civil Service Commission was without jurisdiction to review the employment practices of the Division leaves the Commission in the unenviable position of its jurisdiction over matters of classified versus unclassified service being unsettled until the courts have decided whether its allocation of an employee to classified or unclassified service is correct or not.
The power of the Executive Department or of the Legislature to declare employees of a state agency as unclassified by placing the agency in the "office of the governor," should be very carefully and reluctantly granted, in view of the purpose of the Civil Service provisions. Otherwise, the means *284 of defeating the entire desired effect of Civil Service are too readily available.
The Division makes some persuasive arguments that it should be allowed more unclassified employees. It is not my purpose or prerogative to quarrel with that position. Instead, I quarrel with the method employed, one proceeding in a manner contrary to the practices for the last 25 years, including the first part of the present administration, and one I believe to be contrary to the constitutional provisions.
I dissent.
LOTTINGER, Judge, dissenting.
I respectfully dissent.
If called upon for a decision when the Division of Administration was originally created to determine whether it was within the office of the governor so as to designate all of its employees as unclassified vis-a-vis classified service, I would have been inclined to vote with the majority.
However, I am convinced that since employees of the Division of Administration have been considered as classified employees in civil service by the Civil Service Commission, the Department of Civil Service, and particularly the past and present Commissioners of Administration and the past and present Governors, for more than 20 years, that the doctrine of contemporaneous construction very persuasively mandates that this Court continue that classification. The majority opinion fails to dispute the argument of contemporaneous construction advanced by the Civil Service Commission.
I do not agree with the argument presented by the Division of Administration that an executive or administrative officer can change his interpretation of a statute after many years, and thus have a longstanding interpretation changed.
It is certainly correct that courts are not bound by interpretations placed on statutes by non-judicial branch officials and employees, and that these interpretations are only one of many factors used by courts in attempting to gather the true intent of legislation. However, an interpretation placed on the terminology "office of the governor" by the past and present Commissioners of Administration and Governors is very persuasive in concluding that the Division of Administration was not intended to be included within that term as it relates to classified vis-a-vis unclassified employees.
Therefore, I must respectfully dissent from the majority opinion.