EDWARDS, Judge.'
Hugh M. Carleton, an employee of the Division of Administration, appeals a decision of the Civil Service commission upholding a ruling by the Director of the Department of Civil Service which reduced his salary. We reverse.
Appellant was employed by the Division of Administration on May 9, 1977, as the Director of State Purchasing. His initial monthly salary of $2,500.00 was later raised to $2,575.00, where it remained until March 15, 1979.
Subsequent to the decision in Smith v. Division of Administration, 362 So.2d 1101 (1978), the Director of the Department of Civil Service established a pay range[1] for the position of Director of State Purchasing. That range extended from $1,666.00 to $2,462.00 per month. On March 9,1979, Mr. Carleton was notified that his new salary, as determined by the Director, would be $1,780.00 per month, effective March 15, 1979. This amounted to a reduction in annual salary from $30,900.00 to $21,360.00, a loss of $9,540.00.
Appellant sought review by the Civil Service Commission and alleged that the Department of Civil Service had improperly established a pay plan.[2] Alternatively, Carleton alleged that Civil Service Rules 5.6 *629 and 6.12(d) should have been applied in his case.[3]
The Director of the Department of Civil Service filed a motion for summary disposition on the ground that Mr. Carleton had no basis for an appeal under Civil Service Rule 13.10.[4] In addition, the Director urged that Rule 6.28[5] and not 6.12(d) applied to the case.
Following a hearing on the motion for summary disposition, the Civil Service Commission issued its opinion, No. 2101, on May 14, 1979. Carleton’s appeal was denied and the use of Rule 6.28 was found to have been proper. Carleton then sought judicial review.
Two issues are raised. First, what status in the Civil Service did appellant occupy beginning May 9,1977? Second, was appellant’s salary properly determined?
Smith v. Division of Administration, supra, attempted, but apparently failed, to end the intragovernmental struggle between the Division of Administration and the Civil Service Commission. The Supreme Court stated in Smith:
“Judgment is entered herein in favor of the intervenor, Department of State Civil Service, declaring employees of the Division of Administration classified employees of the State of Louisiana under Article 10, § 2(A) of the Louisiana Constitution of 1974.”
Appellant urges that the Smith Case afforded protection to Division of Administration employees by giving them classified status.
The Department of Civil Service maintains that the Supreme Court in Smith never meant to
“wire into the classified service without competitive examination or appointment and at salaries they had arbitrarily been assigned by the Commissioner of Administration the very individuals whose posi *630 tions in the State service had been successfully challenged by the State Department of Civil Service in the Smith case.”
In briefing this case, counsel for Civil Service stated that:
“Carleton obviously was not occupying the class of position of Director of State Purchasing at the time the range for that position was established but, to the contrary, was occupying, illegally, in an unclassified status a position created by the Commissioner of Administration.”
We do not agree with this position.
When Smith was decided, the Supreme Court placed great emphasis on the long-established view that employees of the Division of Administration were classified employees.
“Since the ‘creation’ of the Division of Administration in 1948, its employees have continuously been treated as classified employees. Despite the Civil Service Amendment adopted in 1952, which listed as part of the unclassified service employees of the ‘offices of the Governor,' the State Civil Service Commission in 1953 ruled that the Division of Administration was not in the office of the governor within the meaning of the constitutional amendment. Apparently accepting the Civil Service Commission’s interpretation, the legislature in Act 42 of 1956 deleted from Act 133 of 1948, by then R.S. 39:1, the words ‘whose employees shall be employees of the office of the Governor.’ W. W. McDougall, Director of the Department of State Civil Service from March 1, 1953, to November, 1968, testified at the hearing conducted to investigate possible violations of civil service law by the Division of Administration that the Division of Administration had consistently not been considered a ‘part of the Governor’s office’ and that its employees were considered in the classified service. The construction placed by the Civil Service Commission has been accepted by every Governor and Commissioner of Administration, including the present one, since that ruling.” 362 So.2d at 1105.
“Even if the Legislature in 1948 did intend, as the 1976 Legislature proclaimed, that the employees of the Division of Administration be in the unclassified service, such intention is irrelevant.” 362 So.2d at 1107.
The obvious conclusion is that all employees in the Division of Administration have been, and are considered to be, in the classified service and are entitled to the protection such status warrants.
Counsel for Civil Service would have us believe that from the day In re Division of Administration, 343 So.2d 277 (La.App. 1st Cir. 1977), was handed down until the day of the Smith decision, all employees hired by the Division of Administration were employed contrary to law and are not entitled to Civil Service protection. This unprotected period would, therefore, extend from February 14, 1977, until September 5, 1978, and appellant would be numbered among the unfortunate.
Counsel’s interpretation of the Smith and In re Division of Administration cases is mistaken. In re Division of Administration became a definitive judgment when the Supreme Court refused writs. Thus, it was the law that from February 14, 1977, until September 5, 1978, all Division of Administration employees were unclassified. Employees hired by the Division during that period, including the appellant, were hired outside of Civil Service guidelines, but they nevertheless were lawfully hired employees. Smith v. Division of Administration was a separate case which overruled but did not reverse the holding of In re Division of Administration. Smith merely determined the status of all Division of Administration employees without any distinction as to how, when, or by whom they were employed. Every Division employee, including the appellant, was instantly given the protected status of a classified employee.
We note that on at least one occasion, the Civil Service Commission has taken the same position, contrary to their posture vis-á-vis Mr. Carleton. On the same day the Commission handed down its opinion in appellant’s case, it also handed down an opin *631 ion in the case of Stafford v. Division of Administration, Civil Service Commission Docket No. 1996.
In that case, Mrs. Retha M. Stafford, a Division of Administration employee, appealed her September 30,1977, termination. The Division urged that from February 14, 1977, until September 5, 1978, the Civil Service Commission had no jurisdiction. However, Mr. R. Gray Sexton, attorney for the Department of Civil Service in both that case and Mr. Carleton’s, had informed Mrs. Stafford that she might be able to appeal her termination to the Civil Service Commission. The Civil Service Commission, in opinion No. 1996, agreed insofar as the question of its jurisdiction extending to the Division of Administration employees at all times. Referring to the Smith case, the Commission stated that:
“It is implicit in this decision of the Supreme Court that the employees of the Division of Administration (with the exception of its appointed head and those occupying the unclassified positions permitted by Civil Service law) are in the classified service of the state and have continued to serve in the classified service of the state, without interruption, since the establishment of the Division of Administration in the Office of the Governor by Act 133 of 1948.”
Since the Commission made no distinction between employees hired prior to and after In re Division of Administration, and since the Commission saw fit to extend Civil Service protection to Mrs. Stafford, it would be illogical and inconsistent not to extend protection likewise to Mr. Carleton.
Therefore, we hold that Hugh M. Carle-ton, legally hired by the Division of Administration, has been in the classified service since his employment on May 9, 1977, and merits the appropriate safeguards.
In determining which rule must be used to fix appellant’s salary, counsel for Civil Service argues that:
“Rule 6.12(d) provides for the narrow situation where a person, occupying a particular class of position in the State service, finds himself being paid in excess of the maximum of the range for that position because of a reduction in the range provided by an amendment of a Uniform Pay Plan.”
We cannot agree that Rule 6.12(d) necessarily must be interpreted in so restrictive a manner. But regardless of Rule 6.12(d)’s scope, we find that appellant does fall within its purview. Therefore, his prior salary of $2,575.00 per month must be lowered only to $2,462.00 and not to $1,780.00.
Civil Service urges that if appellant is found to have always been a classified employee, then the proper measure for his beginning salary would be the lowest one in that class, $1,666.00 monthly, pursuant to Rule 6.4. This rule is inapplicable in the present case where appellant was occupying a position for which he had been properly hired and the range of pay was changed. However, even if Rule 6.4 were to apply, appellant might well have been hired at a salary above the minimum. Rule 6.4(d) allows such appointments.[6]
Finally, appellant contends that the pay plan implemented by the Department of Civil Service on March 15, 1979, required specific gubernatorial approval. Appellant cites Article 10, Section 10(C) of the Louisiana Constitution of 1974 for this proposition. Section 10(C) reads:
“Any rule or determination affecting wages or hours shall have the effect of law and become effective only after approval by the governor or the appropriate governing authority.”
In the present case, we find that Civil Service merely fixed a salary range for appellant. What was done regarding other employees is not at issue in this case.
For the foregoing reasons, the denial of appellant’s appeal is reversed and it is or *632 dered, adjudged and decreed that there be judgment in favor of appellant, Hugh M. Carleton, fixing his salary as Director of State Purchasing at $2,462.00 per month, retroactive to March 15, 1979.
All costs for which it is liable are to be paid by the Department of Civil Service.
REVERSED AND RENDERED.

. Pay range is the entire spectrum of possible salaries for a given position.

. “ ‘Pay Plan’ means all the rates of compensation prescribed by the Commission and approved by the Governor for classes of positions in the Classified Service.” Civil Service Rules. Definition 1.24.

. Rule 5.6
“Status of Incumbent When Position Reallocated.
(a) When a position is reallocated the incumbent shall be entitled to serve therein without change in status, provided
1. He is qualified under the standards in effect, at the time of the reallocation, for the class to which his position is reallocated; and
2. He attains or has attained a passing grade in such written examination as may be in use, at the time of the reallocation, for the class to which his position is reallocated.
(b) The Director, in his discretion, may waive the written test requirement.”
Rule 6.12(d)
“When a Pay Plan is Established or a Range is Changed:
(d) The rate of pay of an employee who is being paid in excess of the maximum prescribed for his class shall be reduced to such maximum.” ,

. Rule 13.10 lists the grounds on which a person may appeal to the Civil Service Commission. Counsel for Civil Service urges that the grounds are exclusive. We need not decide that issue since Rule 13.10(c) clearly allowed Mr. Carleton an appeal based on his allegation that the wrong rule had been used in reducing his salary. The deprivation of a right (here, a salary loss) through the proper application of an improperly selected rule is just as appeala-ble a deprivation as is the improper application of a properly selected rule. We will not permit Rule 13.10 to be read so narrowly as to deprive an employee whose salary has been cut by $10,000 per year of his right of appeal.
Rule 13.10(c) reads:
“An appeal may be made to this Commission by
(c)Any person in the Classified Service who alleges that he has been deprived of any right, discriminated against, or adversely affected by the violation of any provision of the Article or of any Rule of this Commission.”

. Rule 6.28
“Pay Upon Change from Unclassified Service to Classified Service.
When the status of an employee in the State service is changed from the unclassified to classified the Director, upon request of the appropriate appointing authority, may fix his rate of pay at such step or intermediate step in the range for his class of position for which he would have attained eligibility under the provisions of Rule 6.15 had his status been classified during his unclassified service; provided:
1. The nature and quality of such service is recognized as qualifying under the examination specifications prescribed for the class of position; and
2. The Director may not fix the employee’s rate of pay at a figure in excess of that he was receiving at the time of his change of status, unless his rate of pay while serving with unclassified status did not equal or exceed the minimum rate of the range for his class of position.”

. Rule 6.4(d)
“When an appointing authority makes an emergency appointment, he may fix the pay of the employee at any step within the range for the class, provided that with the approval of the Director the rate may be fixed at an amount in excess of the maximum.”